## GASKINS vs. GASKINS.[*]

*Twelfth District Court for San Francisco Co., November, 1857.*

### DIVORCE—EXTREME CRUELTY—BODILY FEAR.

Extreme cruelty is such conduct on the part of either husband or wife, whether manifested by words or acts or both, as by the common understanding and judgment of mankind, living in civilized societies, ought not to be borne by the other party.

In an action for a divorce by a wife, on the ground of extreme cruelty, it is sufficient that she should prove repeated, deliberate, and groundless imputations by the husband in the presence of others, against her chastity.

It is not necessary that *any one act* amounting in itself to extreme cruelty, should be proven; an accumulation of acts of an harsh and annoying nature, may be sufficient to sustain an action on that ground.

Condoned acts of cruelty will be revived by subsequent harsh treatment.

Threats of bodily injury, in the event of the subsistence of the marital relation, are proper to be considered in deciding an issue of extreme cruelty.

Action for a divorce brought by a wife on the ground of extreme cruelty on the part of the husband. The evidence established that he had repeatedly, in the presence of others, charged her with a want of chastity, and had, on at least two occasions, inflicted bodily injury, though of rather a slight character, upon her. That they had been married about nine years, and had two children. That she had left him once, leaving the children with him, and subsequently at his solicitation, returned; that she afterwards left him again, on this occasion taking the children with her, and repeatedly refused to return; that since this last separation he has frequently threatened to inflict bodily injury upon her, and to shoot her if the opportunity should ever be presented; that he has also upon various occasions, repeated the above charges, and once under aggravated circumstances, assaulting her publicly in the street at the time, and accusing her before the crowd, whom the incident attracted.

No evidence was introduced on the part of the defense.

*S. H. Brodie* and *G. F. & W. H. Sharp*, for plaintiff.

*Pixley & Smith*, for defendant.

[*]See *supra Pursley vs. Pursley*, 51.

*S. H. Brodie,* to show that subsequent ill-treatment would revive condoned cruelty, cited Whispell vs. Whispell, 4 *Barb., S. C. R.,* 217, 221 ; Evans vs. Evans, 2 *Haggart. Ec. R.* 70, and 2 *Barb. Ch. Prac.* 262, and authorities there cited. That threats without an actual assault, constitute extreme cruelty. Harris vs. Harris, 2 *Phillim.,* 111 ; Evans vs. Evans, *supra.* That the language used by defendant, *per se,* constitutes extreme cruelty ; Whispell vs. Whispell, *supra.*

*F. Pixley* argued *contra* generally, that the facts proven did not substantiate the charge relied upon to obtain the divorce. Three issues were framed to be passed upon by the jury :

*First.*—The substantiation or otherwise of the charge of habitual intemperance preferred against the defendant.

*Second.*—that of extreme cruelty ; and

*Third.*—Of a counter charge of infidelity against the wife.

The introduction of proof upon this third issue was expressly abandoned by counsel for the defendant upon the commencement of the trial, as was also that upon the first, by counsel for plaintiff, leaving the second, that of extreme cruelty, as the only one to be passed upon by the jury.

NORTON, J.— *Gentlemen of the Jury :* The statute of this state regulating the subject of divorces, authorises them to be granted in various cases in which, in a large number of the other states, they are not permitted. Here they are allowed absolutely where the husband, being of sufficient ability to support the wife, neglects so to do, where either party is guilty of habitual intemperance, or extreme cruelty towards, or wilfully deserts the other—causes which, in the majority of the other states, will only authorise a divorce from bed and board. For this reason reported cases of divorce on the ground of extreme cruelty are not very numerous, and these are usually decided by a judge without a jury, in which his conclusions upon the facts are given instead of definitions or rules of law for the instruction of juries ; and hence we do not find in adjudicated cases a clear definition of that which constitutes extreme cruelty, and which is exactly applicable to these words as used in our statute, and can be considered as determining that act or combination of acts, which, under its provisions,

will authorise a divorce. There is but little difficulty in deciding. whether certain facts do or do not amount to extreme cruelty, but there is great difficulty in giving a general definition of extreme cruelty; perhaps, however, it may be said to be such conduct on the part of one of the parties, whether manifested by words alone, or by personal violence, or by both, as by the common understanding and judgment of mankind, living in civilized societies, ought not to be borne or tolerated by the other, which is probabbly as near a definition as the court can give, to aid you in coming to a conclusion upon the point. Formerly it was said that *language alone* could not constitute extreme cruelty; that to sustain this charge, there must be some act of personal violence committed, such as beating the wife, or otherwise severely maltreating her. In modern times, the rule becoming gradually relaxed, this doctrine has been denied, and words alone of an insulting, opprobrious and injurious character, have been declared to constitute of themselves, extreme cruelty. There are two points in this case which you should properly consider separately: *first*, the acts complained of, committed by the husband towards his wife *before*, and *secondly*, those committed *after* her separation from him. With regard to these latter, you should, in determining the character of their bearing upon the case, and the importance or otherwise to be attached to them, very carefully weigh and consider the surrounding circumstances. I do not charge you that you must disregard them altogether, but that you should be cautious not to forget the circumstances attending them, and the position of the parties at the time of their commission, as working a palliation or otherwise so far as they are concerned.

The first act of violence complained of, and in proof of which evidence has been introduced, was that which occurred in October, 1853. This was afterwards forgiven, not necessarily in express language, but by the mere fact of the subsequent cohabitation, by which the law presumes forgiveness, but annexes the condition of proper conduct and kind treatment on the part of the offending party for the future, and a non-compliance on his or her part with this implied condition, has the effect of nullifying the implied forgiveness, and remitting the injured party back to the original injury, that is, that subsequent acts of the same kind, revive condoned cruelty, or in other words, make the acts complained of continuous and connected, and as though the

forgiveness had never been granted. So that in taking into consideration this first fact, in connection with the others which have been proven, you are to disregard the intervening forgiveness, and to determine whether or not *all* the facts taken together, unitedly amount to the extreme cruelty of which plaintiff complains.

Sometimes a single act of and by itself, is extreme cruelty; as where the husband should severely beat his wife, or otherwise inflict a serious bodily injury upon her. But an accumulation of acts, all of an unkind, harsh or cruel character, but none of which would, by itself, authorise a divorce, may, when considered together, constitute extreme cruelty. And also, when the mere *acts* complained of would not, by themselves, even when considered together, authorise the relief sought, yet the *words* and *language* by which they may have been accompanied, must be also considered, and if of a character to wound the sensibilities and hurt the feelings, they may, in connection with the acts, make out the charge of extreme cruelty. In the present case the defendant has frequently used coarse and offensive language towards his wife, and has repeatedly given vent to imputations against her chastity. Some indulgence is due and must be shown to every one on account of infirmity of temper, which may palliate, and even excuse a coarse, harsh or insulting expression towards his wife, hastily expressed under aggravating circumstances; but where it takes the form of a deliberate charge, and that of the character which I have mentioned, is spoken in the presence of witnesses, and habitually repeated, then such acts constitute extreme cruelty. If you should conclude from a full consideration of the evidence, that the acts charged against the husband as having been committed before the separation do not sustain the issue presented to you, you are then at liberty to consider the subsequent acts. But in determining the proper weight to be attached to these, you must, as I have already stated, take well into consideration the surrounding circumstances—the fact that the plaintiff was then living separate from her husband, and that she had refused to return, and that he was not permitted to see her or the children whom she had taken with her. It is proven that he has threatened to commit bodily injury upon her, to cowhide her, and to shoot her whenever he should find the opportunity. The testimony upon this particular point, however, should be received with some degree of caution on account of the

nature of the subject to which it refers. Had he said that he would cowhide her if she did not return home or something to that effect, it would be a very different thing from a threat to cowhide her at all events if the opportunity should present itself, while yet the difference in the actual remarks themselves, is not so great that auditors would necessarily notice it, or might not readily mistake one for the other in their recollections of them narrated sometime afterwards. However, you are to judge how far these *threats* manifest such an *intent* upon his part *to carry them into e :cution* as would warrant, or give her *reasonable cause to fear their actual infliction;* and can take those threats into consideration with the other facts in deciding the issue of extreme cruelty, which has been submitted to you.

As to the first and third, they having been framed and submitted, must be passed upon by you, and there having been no testimony introduced in support of either of them, you will in both instances, find negative answers.

The jury found affirmatively as to the second issue, and negatively as to the first and third.